IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| THE ARC OF VIRGINIA, INC., | : | |
| | : | |
| Plaintiff, | : | MEMORANDUM IN OPPOSITION |
| | : | |
| v. | : | |
| | : | Case No.: 3:09cv686 |
| TIMOTHY M. KAINE, *et al.,* | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

## I.  INTRODUCTION

Allegedly in an effort to implement Budget Bill Item 103.05(A)(1), Defendants intend to

build and fully populate a new segregated institution to house 75 residents of Southeastern

Virginia Training Center ("SEVTC").

Defendants' plan comes despite a state-sponsored study concluding that all SEVTC

resident "Can Be Served In The Community" and despite their own admissions that the new

institution is "arbitrary," not a product of any "science or study," is not related to the actual

needs of SEVTC residents and that SEVTC residents "don't need to be institutionalized."

Defendants also admit that they did not conduct any individualized assessments to determine

which, if any, SEVTC residents actually require institutionalization before predetermining that

75 would be placed in a new segregated institution. [1]

---

[1] In their Memorandum in Support, Defendants do not deny making these admissions.

1

The Arc of Virginia, Inc. ("the Arc") filed this action alleging (1) that Defendants' plan and Budget Bill Item 103.05(A)(1), to the extent it requires such a plan, violate the rights of Arc members residing at SEVTC and (2) that the plan and Item conflict with and are preempted by federal law.

This Memorandum responds to Defendants' Motion to Dismiss. Defendants' arguments contesting the Arc's standing, the ripeness of the Arc's causes of action and the legal sufficiency of the Arc's claims are without merit.

Missing from Defendants' Motion and Memorandum is any substantive discussion of their obligations under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). Significantly, Defendants do not deny that the Acts require them to provide services to people with disabilities in the most integrated setting appropriate to their needs and to conduct individualized assessments to determine those needs.

The state-sponsored study, Defendants' admissions, and their failure to conduct individualized assessments before deciding to institutionalize 75 SEVTC residents prove that their plan and Budget Bill Item 103.05(A)(1), to the extent it requires such a plan, violate, conflict with and are preempted by the ADA and Section 504. In addition, the plan and Item threaten Arc members with "unjustified institutional isolation" in violation of their rights.

Accordingly, the Arc enjoys both individual and associational standing; its causes of action are ripe and legally sufficient; and the Governor and Secretary of Administration, who have a "special relation" to Defendants' plan and Budget Bill Item 103.05(A)(1), are proper Defendants. Therefore, Defendants' Motion should be Denied.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Southeastern Virginia Training Center

SEVTC is located on a 120 acre compound in an isolated section of Chesapeake, Virginia. *See,* Affidavit of Mark Stevens (hereinafter "Stevens Affidavit"), attached hereto and made a part of this Memorandum as Exhibit A, ¶ 8. The SEVTC compound is segregated from the community, on all sides, by barriers including a trench, barbed-wire topped fences, and "No Trespassing" signs. Stevens Affidavit, ¶¶ 12-15

### B.    Facts Leading to This Action

Approximately 150 Virginians with intellectual disabilities (formerly known as "mental retardation") live at SEVTC. 8 members of the Arc live at SEVTC and other Arc members are at risk of being admitted to SEVTC. Affidavit of Jamie Trosclair, attached to and made a part of this Memorandum as Exhibit B ("Trosclair Affidavit"), ¶¶ 11-12.

In his proposed budget for 2010, Defendant, Timothy M. Kaine ("the Governor"), proposed closing SEVTC. In an interview, the Governor stated that SEVTC residents "don't need to be institutionalized." *See,* WAVY-TV, "Kaine on the economy and 'going green,'" http://www.wavy.com/dpp/news/local_wavy_kaine_budget_update_southeastern_20090112

Instead of closing SEVTC, the Virginia General Assembly passed Budget Bill Item 103.05(A)(1), which ordered that a new 75-bed "facility" be built. A copy of Budget Bill Item 103.05, is attached to and made a part of this Memorandum as Exhibit C.

Budget Bill Item 103.05(A)(1) directs the Department of Mental Health, Mental Retardation and Substance Abuse Services ("DMHRMSAS," now known as the Department of Behavioral Health and Developmental Services ("DBHDS")) and the Department of General

Services ("DGS") to "rebuild and resize the Southeastern Virginia Training Center to a 75-bed facility" and allots $23,768,000.00 for construction.

The Commissioner and Deputy Commissioner of DMHMRSAS/DBHDS have publicly stated that they do not know how the General Assembly came up Budget Bill Item 103.05(A)(1), requiring a 75-bed facility. For example, Deputy Commissioner Heidi Dix publicly stated that DBHDS feels that it is "arbitrary, " not based on the needs of any SEVTC residents and was chosen because the General Assembly thought it was a "nice, round number." Trosclair Affidavit, ¶¶ 51-55. The Commissioner publicly stated that the 75-bed institution was not the result of any "science or study." Trosclair Affidavit. ¶30-33.

Each of the Defendants – the Governor, the Commissioner, the Secretary of Health and Human Resources, Secretary of Administration Viola O. Baskerville ("the Secretary of Administration") and Director of DGS Richard F. Sliwoski ("the Director") - is implementing or working to implement Budget Bill Item 103.05(A)(1).

Two months after the Governor signed the Commonwealth's budget, Virginia received a study removing any justification for building a new institution. In June of 2009, a state-sponsored study concluded that all SEVTC residents "Can Be Served in the Community." The study was performed by the Human Services Resource Institute, pursuant to a contract with DMHMRSAS/DBHDS (hereafter "DBHDS"), and was based on medical records and evaluation data collected and kept by DBHDS. A copy of the study is attached to and made a part of this Memorandum as Exhibit D.

Despite having a report flatly stating that no SEVTC residents required institutionalization, Defendants continued to work on a plan to institutionalize 75 SEVTC

4

residents.  Tellingly, Defendants did not even attempt to conduct assessments to determine

which, if any, SEVTC residents actually required institutionalization.

Defendants' failure to do so is shown by a 19 August 2009 letter from counsel for the

Governor.  Responding to a request for information, counsel admitted that the Defendants did not

have any "assessments, evaluations, studies or documents that were created or reviewed prior-to

or leading to the conclusion that a new 75 bed institution is needed or appropriate."  Counsel also

admitted that the Defendants did not have "any individualized assessments . . . indicating that a

new institution is required to house people with disabilities" or any documents "indicating how,

specifically, the 75 bed census was determined."   A copy of counsel's letter is attached to and

made a part of this Memorandum as Exhibit E.

Instead of conducting assessments to determine the actual needs of SEVTC residents and

forming a plan to meet those needs in the most integrated setting appropriate to them, Defendants

created a plan calling for 75 people to be placed in a segregated institution.  The Commissioner

announced Defendants' plan on 13 August 2009, at a meeting of the SEVTC Advisory Council.

A copy of the plan is attached to and made a part of this Memorandum as Exhibit F.

Under the Defendants' plan, a new segregated 75-bed institution will be built on the

SEVTC compound, under the auspices of DGS and DBHDS.   Trosclair Affidavit, ¶ 31, 46.  In

response to a question, the Commissioner admitted that the 75-bed institution was not arrived at

through any "science or study."  Trosclair Affidavit, ¶ 33.

The Commissioner further stated that, under the Defendants' plan, all SEVTC residents

will be evaluated.  Based on the evaluations, the 65 that score the "lowest" will be placed in the

new institution. The other 10 beds in the new institution will be used by SEVTC residents who

are transitioning from or to community settings.  Trosclair Affidavit, ¶¶ 34-36.

Under Defendants' plan, they will sign a contract for the construction in December of 2009 and construction on the institution will begin in August 2010. Trosclair Affidavit, ¶ 46.

## II.   ARGUMENT

At the outset, it should be noted that the vast majority of Defendants' Memorandum repeats, in some cases verbatim, arguments they made in their Memorandum of Law in Opposition to the Arc's Motion for a Preliminary Injunction. Therefore, of necessity, a great deal of this Memorandum will track the arguments made in the Arc's Reply Memorandum in Support of it Motion. The Arc apologizes for any repetition but has elaborated on its arguments, where appropriate, to more fully respond to Defendants' Motion to Dismiss.

> A.   The Arc Enjoys Standing in its Own Right to Challenge the Constitutionality of Defendants' Plan and Budget Bill Item 103.5(A)(1)

Counts III and VI of the Arc's Complaint challenge the constitutionality of Defendants' plan to build and fully populate a new segregated institution and of Budget Bill Item 103.05(A)(1), to the extent it requires such a plan. In their Memorandum, Defendants incorrectly argue that the Arc does not have standing to bring these causes of action.

Defendants' argument fails because an organization suffers an "injury in fact" and has "standing to sue in its own behalf if the defendant's illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts." *Common Cause/Georgia, et al. v. Billups, et al.,* 554 F.3d 1340, 1350-51 (11th Cir. 2009) (citing *Havens Realty Corp v. Coleman,* 455 U.S. 363 (1982)). "[T]he fact that the added cost [to the organization] has not been not been estimated and may be slight does not affect standing, which requires only a minimal showing of injury." *Crawford v. Marion County Election Board,* 472

F.3d 949 (7th Cir. 2007), *aff'd* 553 U.S. ___, 128 S. Ct. 1610 (2008) (*citing Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 180-84 2000)).

Here, the Arc alleges that it has been forced to divert its resources, and expects to continue doing so, in order to oppose and counteract the damage caused by Defendants' plan and Budget Bill Item 103.05(A)(1). *See,* generally, Complaint ¶¶ 142-147; 175; Trosclair Affidavit, ¶¶ 59-64. Thus, like the organizational Plaintiffs in *Havens Realty* and *Common Cause/Georgia,* the Arc has standing to challenge the Defendants' illegal acts.

Defendants' arguments to the contrary are without merit. First, their contention that the Arc has not suffered an injury in fact fails based upon *Havens Realty* and its progeny. While Defendants try to distinguish *Havens Realty,* they fail to note that the Supreme Court found that the *Havens* Plaintiff had standing based upon a single paragraph in its Complaint alleging that it "had to devote significant resources to identify and counteract the . . . [Defendant's] practices." *Havens Realty,* 455 U.S. at 379. Based on that allegation alone, the Court held "If, as broadly alleged, petitioners' steering practices have perceptibly impaired HOME's ability . . . there can be no question that the organization has suffered injury in fact." *Id.*

The Arc has gone far beyond the "broad allegations" made by the Plaintiff in *Havens Realty.* The Arc has given specific examples of efforts it undertook, resources it diverted and work it was forced to delay or abandon in order to oppose Defendants' plan and Budget Bill Item 103.05(A)(1). *See,* Trosclair Affidavit, ¶¶ 59-64. The Arc's diversion of its resources demonstrates "concrete and demonstrable injury to the organization's activities - with the consequent drain on the organization's resources" sufficient to give the organization standing to bring its causes of action. *Havens Realty,* 455 U.S. at 379.

Because the Arc has been injured by the diversion of its resources to oppose Defendants' plan and Budget Bill Item 103.05(A)(1), it has standing to challenge the constitutionality of the plan and Item. In *Common Cause/Georgia,* a case from 2009, the 11th Circuit held that the NAACP had standing to contest the constitutionality of a Georgia voting registration law because it had diverted resources, and anticipated continuing to do so, to oppose the statute. *Common Cause/Georgia,* 554 F.3d at 1350-51. The Court held that the NAACP's diversion of resources to oppose the law and educate clients about it "established an injury sufficient to confer standing to challenge the statute." *Id.*

Contrary to Defendants' argument, the resources diverted by the Arc were not "litigation-related." The Arc has not claimed that any time or monetary resources it expended in this litigation - such as time spent meeting with attorneys, filing fees, or any other litigation activities- give it standing to sue. Rather, the Arc bases its standing on the resources it has and will divert to oppose the plan and Budget Bill through administrative, educational and advocacy means and the planned actions it was forced to delay or abandon as a result.[2] Trosclair Affidavit, ¶¶ 59-64. This is exactly the type of resource diversion found to confer standing in *Havens Realty* and *Common Cause/Georgia. See,* also, *Liberty Resources Inc., et al. v. Southeastern Pennsylvania Transportation Authority,* 155 F. Supp. 2d 242, 251 (E.D.Pa. 2001) (organization

---

[2] The Arc is willing to provide more details regarding the resources it diverted even though it does not believe that doing so is necessary to establish standing (especially at this stage of the litigation). *See, e.g., Smith v. Pacific Properties and Development Corporation,* 358 F.3d 1097, 1105-06 (9th Cir. 2004). However, should the Court believe that more details are required, the Arc respectfully requests an opportunity to amend its Complaint.

had standing because it diverted resources to meet with defendants and to assist clients).[3]

Next, Defendants incorrectly argue that the Arc lacks standing because Defendants are "merely charged" with carrying out an Act of the General Assembly. However, as Defendants admit in their Memorandum in Support of their Motion, Plaintiffs may challenge State laws or actions by suing government officials who have a "special relation" to them. *See, e.g, Waste Management Holdings, Inc. v. Gilmore,* 252 F.3d 316, 331 (4th Cir. 2001); Defendants' Memorandum in Support, p. 17-18. Thus, the fact that Defendants are allegedly carrying out the General Assembly's wishes does not relieve them of liability or deny standing to the Arc.[4]

Defendants' quotation from *Olmstead* - "nothing in the ADA or its implementing regulations condones termination of institutional settings for persons unable to handle or benefit from community settings" - supports both the Arc's standing and its case. The Arc is challenging Defendants' plan because they intend to build and fully populate a segregated

---

[3] Defendants make a last attempt to disparage the Arc's diversion of resources by calling its advocacy "unnecessary and misdirected" and claiming that such efforts cannot confer standing. Of course, by so stating, they admit that the Arc has, in fact, diverted its resources to advocate against Defendants' plan and Budget Bill Item 103.05(A)(1). Therefore, this Court should find that the Arc has standing to challenge the plan and Item. As to Defendants' characterization, the Arc imagines that any Defendant faced with advocacy or legal action against it would consider that action to be "misdirected." More to the point, the Arc knows of no cases holding that a Court must perform a valuative analysis of an organization's diversion of resources as a precursor to finding that those efforts gave it standing to sue, and Defendant cite none.

[4] It is worth noting that this Court can hold that Budget Bill Item 103.05(A)(1) does not require the Defendants' plan and, therefore, does not violate the ADA or Section 504. The Item does not call for the creation of a segregated institution, stating only that a "facility" should be built. A "facility" can be many things: for example, SEVTC is a "facility" made up of several buildings spread out over a large area. The "facility" called for in Budget Bill Item 103.05(A)(1) could be made up of several buildings spread out over an integrated community setting. Hence, this Court can hold that Defendants were not charged to create a plan to build and fully populate a segregated institution and have, therefore, violated the Act they claim to be following as well as the ADA and Section 504. Such a holding would be in keeping with precedent holding that "a court should avoid, if possible, that construction of a statute that would result in its constitutional invalidation." *Anderson v. Babb,* 632 F.2d 300, 308 (4th Cir. 1980) (citation omitted).

9

institution for people who, according to the state-sponsored study, are able to handle and would benefit from living in community settings and because they have not conducted individualized assessments to determine the actual needs of SEVTC residents. Consequently, the Arc alleges, Defendants' plan violates the ADA and Section 504. The Arc's previous and future diversion of resources to oppose the plan gives it standing to mount this challenge. *Common Cause/Georgia,* 554 F.3d at 1350-51.

To the extent that Defendants claim this Court lacks jurisdiction to hear the Arc's challenge, that contention fails based upon *Verizon Maryland Inc. v. Public Service Commission of Maryland, et al.,* 535 U.S. 645 (2002). In *Verizon Maryland,* the Court reversed the Fourth Circuit and held that federal courts can hear Supremacy Clause challenges to state laws or actions. 535 U.S. at 642-43. The Court also held that the Eleventh Amendment does not bar challenges brought, like this one, against state officials in their official capacity. *Id.* at 645-46.

B.    The Arc Enjoys Associational Standing to Prosecute its Causes of Action on Behalf of its Members.

Defendants' conclusory arguments against the Arc's associational standing are without merit. First, the fact that the Arc has not identified, by name, its members residing at SEVTC does not divest the Arc of standing to bring an action on their behalf. The Arc admits it has not identified, by name, the SEVTC residents who are Arc members. This is because the Arc reasonably fears that if the identity of its members becomes public knowledge, its members will be subject to intimidation by people opposed to this case. The Arc has good reason for its concern: one SEVTC resident readily agreed to join the Arc and became an Arc member. However, when the resident's father found out about the membership, the Arc received threats and demands that the resident's membership be rescinded. In addition, the resident reacted with

10

great fear when the Arc next visited SEVTC. *See,* Second Affidavit of Jamie Trosclair, attached to and made a part of this Memorandum as Exhibit G, ¶¶ 4-12.

More to the point, the Arc is unaware of any cases requiring an organization to identify its members by name, at least at this stage of the litigation, and Defendants have cited none. However, should the Court require the Arc to produce the names of its members, it will ask that the Court issue an appropriate Protective Order and/or receive the information *in camera.*

Even so, Defendants are simply wrong when they say that the Arc has not properly alleged that its members have standing to sue. The Arc has stated that, based on the state-sponsored study, its members living at SEVTC do not "need" institutionalization. Complaint, ¶¶ 94 -114; 118-137. The Arc has alleged that its members living in SEVTC are nevertheless at risk of being placed in the new segregated institution because Defendants have arbitrarily chosen to place 75 SEVTC residents in it.[5] *Id.* These allegations establish a threat to Arc members' ADA and Section 504 rights, including their right to receive services in the most integrated setting appropriate to their needs, giving them standing to sue. *See,* e.g., *Friends of the Earth, Inc. v. Gaston Copper*, 204 F.3d 149, 160 (4th Cir. 1999) (increased risk of injury causes injury in fact) Contrary to Defendants' assertion, the Arc need not wait until one of its members is actually placed or selected for placement in the new institution before filing suit because "one does not have to await the consummation of threatened injury to obtain preventative relief." *Id.*

The remainder of Defendants' argument against the Arc's associational standing alleges that the Arc cannot show harm to its members unless and until one of them is placed in the

---

[5] As discussed more fully below, Defendants' self-serving statement that they will only place people in the new institution who choose to live there should not be given any weight and actually contradicts Defendants' plan. *See, infra,* at pp.15-17.

segregated institution. This argument is the same one they make when claiming that the Arc's causes of action are not ripe. Therefore, it will be addressed in section C, immediately following.

C.     The Arc's Claims are Ripe for Adjudication

Defendants incorrectly argue that the Arc's causes of action are unripe because they have not yet chosen the 75 SEVTC residents who will be placed in the new institution. This argument necessarily attacks the ripeness of the Arc's causes of action brought in their own right (Counts III and VI) and those brought pursuant to its associational standing (Counts I, II, IV and V). The Arc will address each separately.

1.     The Arc's causes of action in its own right are ripe.

With regard to the Arc's causes of action in its own right - Counts III and VI challenging the constitutionality of the Defendants' plan and Budget Bill Item 103.05(A)(1) - Defendants' argument fails completely. In general, causes of action that are "predominantly legal," like the Arc's constitutional challenge, are "more likely to be found ripe." *Fielder,* 475 F.3d at 188.

Specifically, the Arc contends that Budget Bill Item 103.05(A)(1) and Defendants' plan conflict with and are preempted by the ADA and Section 504. Complaint, ¶¶ 138-164. These claims are ripe because the Defendants have "not suggested that [their plan or the Item] will not be enforced." *Miller v. Brown,* 462 F.3d 312, 321 (4th Cir. 2006) (citing *Virginia v. Am. Booksellers Ass'n,* 483 U.S. 383, 393 (1988) (Plaintiff had standing to challenge a statute where there was no evidence it would not be enforced)).

Furthermore, it is hardly rare for a Court to hear challenges to state laws before their full implementation. *See, e.g., Fielder,* 475 F.3d at 180. In *Fielder*, Maryland passed a law requiring certain retailers to pay a tax to fund health care. The law required the State to promulgate

12

regulations to implement the statute. Before any regulations were issued, the organizational Plaintiff filed suit to enjoin enforcement of the statute. The Defendants argued that the case was not ripe because regulations were not yet promulgated and, therefore, there was no way to know whether its members would be injured by the statute. The Court held that the Plaintiff's case was ripe because the lack of regulations did "not alter the Act's provisions . . . that [Plaintiff] claims are invalid." *Fielder,* 475 F.3d at 188.

The same is true here. The fact that Defendants have not yet chosen the specific people who will populate the institution does not alter the provisions of Defendants' plan or Budget Bill Item 103.05(A)(1) that the Arc "claims are invalid." These provisions include the building of a segregated institution for 75 SEVTC residents despite a state-sponsored study finding that all SEVTC residents can be served in the community and without Defendants conducting assessments to determine if any SEVTC residents actually require institutionalization. Therefore, pursuant to *Fielder,* the Arc's challenge to those requirements is ripe for adjudication.

2.    The Arc's causes of action brought on behalf of its members are ripe.

With regard to the Arc's causes of action on behalf of its members, Defendants' argument is without merit because neither the Arc nor its members must wait until a threatened injury actually occurs before taking steps to prevent it. *Friends of the Earth,* 204 F.3d at 160. Under Defendants' argument, the Arc could not file suit to enjoin the building and population of a segregated institution until the segregated institution is actually built and populated. Such a rule would "eliminate the claims of those who are directly threatened but not yet engulfed by an unlawful" action. *Friends of the Earth,* 204 F.3d at 160. It would also allow the Defendants to

moot the Arc's case seeking to prevent construction of the segregated institution simply by delaying naming the people who will populate the new facility until it completes construction.

In fact, the Arc's association standing case is ripe because it has members living in SEVTC and 75 SEVTC residents will be placed in the new institution - even though the state-sponsored study concludes that no SEVTC residents require institutionalization and Defendants did not perform individualized assessments to determine if any do. Therefore, all SEVTC residents, including Arc members, are at risk of being among the 75 people who will be placed in the new institution in violation of their ADA and Section 504 rights to receive services in the most integrated setting appropriate to their disabilities and to receive individualized assessments to determine those needs. *See,* 28 C.F.R. § 35.130(d) (ADA); 28 C.F.R. § 41.51 (Section 504); United States Department of Justice Commentary to 28 C.F.R. § 35.130 (Under the ADA, "public entities are required to ensure that their actions are based on facts applicable to individuals and not on presumptions as to what a class of individuals can or cannot do."); *PGA Tour v. Martin*, 532 U.S. 661, 688 (2001) (Under the ADA, "an individualized inquiry must be made to determine" whether a particular person requires a particular service or accommodation*); School Board of Nassau County v. Arline,* 480 U.S. 273, 287-88 (1987) (Section 504 requires an individualized inquiry into a person's needs and abilities).

Consequently, Arc members living at SEVTC are threatened with "unjustified institutional isolation" in violation of their rights. *Olmstead,* 527 U.S. at 600. The Arc's causes of action to challenge that threat are ripe. *Friends of the Earth,* 204 F.3d at 160.

Defendants attack this claim by insisting that "residing in the new facility will be voluntary." In support of their position, Defendants cite a letter from the Secretary of Health,

Defendant Marilyn Tavenner, saying that only people who want to live in the new institution will be placed there. Exhibit C to Defendants' Memorandum in Support of their Motion.[6]

Because Secretary Tavenner's letter is self-serving and unsupported by other evidence, and actually contradicts Defendants' plan, it should not be given any weight by this Court. At the outset, this case marks the first time Defendants have publicly taken this position. Such a statement does not appear in Budget Bill 103.05(A)(1), Exhibit C; in the plan they submitted to the SEVTC Advisory Committee on 13 August 2009, Exhibit F; in the Commissioner's testimony to the General Assembly on 21 September 2009, attached and made a part of this Memorandum as Exhibit H; or in the update Defendants submitted to the SEVTC Advisory Committee on 24 September 2009, attached and made a part of this Memorandum as Exhibit I.

Instead, this new position appears only in Secretary Tavenner's letter, which was sent after the Defendants had actual knowledge of the Arc's position.[7] Additionally, Secretary Tavenner's letter contradicts Defendants' plan, which states, "Personal preference is an important consideration but will not be the sole basis for selection." *See,* Exhibit F, p.2.

Hence, Secretary Tavenner's letter is nothing more than an uncorroborated and self-serving statement, which is contradicted by the facts, and should not be given any weight. *See,*

---

[6] Defendants also allege that their Exhibit G, a separate state law, establishes that they will only place people in the new segregated institution who wish to live there. Even a cursory reading of Exhibit G shows that it does not address or involve placement in the new institution. Furthermore, the law does not make a person's choice the determinative factor in his or her placement, saying only that consumer choice will be "considered." Therefore, even if the law addressed admission to the new institution, which it does not, it would not allay the threat that Arc members will be chosen to live in the new segregated institution.

[7] Secretary Tavenner's letter is dated 28 October 2009. On 14 October 2009, the Arc sent Defendants final notice of their claims, including their claim that Arc members are at risk of placement in the new facility. Complaint, ¶ 89. Also of note is that Secretary Tavenner's letter is dated the day after this action was filed.

*e.g., Filler Products, Inc. v. N.L.R.B.*, 376 F.2d 369, 379 (4th Cir. 1967) (holding that Plaintiff's self-serving statement in support of its position was not entitled to weight and did not "warrant a finding of fact.").[8]

This is all the more true because her statement cannot be relied upon. "Estoppel does not apply to the government in the discharge of its governmental functions." *Gwinn v. Alward*, 235 Va. 616, 621 (1988). Therefore, if Defendants or the next administration withdraw their position, Arc members will be unable to hold the Commonwealth to it. Consequently, Arc members at SEVTC remain at risk of placement in the new institution.

3.      Even if the Arc's causes of action for an Injunction on behalf of its members are not ripe, its causes of action for Declaratory Judgments on behalf of its members are ripe.[9]

The Arc's causes of action for Declaratory Judgments on behalf of its members are ripe, even if its causes of action for Injunctions on behalf of its members are not, because the Arc's prayers for Declaratory relief are its "central claim." *Norfolk and Western Railway Company, et al. v. Brotherhood of Railroad Signalmen, et al.*, 164 F.3d 847, 856 (4th Cir. 1998). Defendants' ripeness challenge is essentially a claim that Arc members do not face imminent injury because no one has been selected to live at the new segregated institution. However, the Fourth Circuit has held that a lack of imminence will not defeat standing when a party's central claim is for Declaratory relief and its prayer for an Injunction is ancillary to it. *Id.*

---

[8] Additionally, because Secretary Tavenner's letter contradicts Defendants' plan, it should, at best, be considered an example of "voluntary cessation of illegal activity." Such actions do not render a Plaintiff's case challenging the illegal activity either moot or unmeritorious. *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953).

[9] This section applies only to the Arc's causes of action on behalf of its members (Counts I, II, IV and V). The Arc's causes of action in its own right were addressed in section 1, *supra.*

In *Norfolk and Western Railway,* the Plaintiff and Defendant disagreed as to whether one law superseded another. The Plaintiff sought a Declaratory Judgment that its view of the law was controlling and an Injunction preventing the Union from engaging in a strike. The Union argued that the Plaintiff lacked standing because no strike was imminent. The Court held:

> If the railroads had only sought injunctive relief and the threat of the strike sought to be enjoined had not been imminent, then the railroads would indeed have lacked standing . . . .
>
> But the case before us does not depend, in a constitutional sense, on the claim for injunctive relief. The railroad's request for an injunction was ancillary to the remedy they sought on their central claim - a declaratory judgment that the ICA supersedes the RLA . . . Accordingly, we conclude that the controversy . . . presents us with a live case in the constitutional sense and that the declaratory judgment remedy . . . was an appropriate exercise by the district court of its Article III power. *Id.* at 856.

The case at bar is analogous to *Norfolk Railway.* As in *Norfolk Railway,* the Arc's central claims are for Declaratory Judgments. *See, e.g.*, Complaint, Preliminary Statement ("Plaintiff, The Arc of Virginia, Inc., prays that this Court hold that Defendants' plan, and/or the state Budget Bill Item that precipitated it, violate federal law and the rights of Arc members."). The vast majority of the Arc's causes of action on behalf of its members relate to its requests for Declaratory Judgments. *Compare,* Complaint, ¶¶ 92-137 (Counts I and II seeking Declaratory Judgments) *with* Complaint, ¶¶ 165-170 (Counts IV and V seeking Injunctions).

Furthermore, in Counts I and II, the Arc first asks that the Court enter Declaratory Judgments setting forth its members' rights under the ADA and Section 504 "to receive appropriate services from the Defendants . . . including their right to receive services in the most integrated setting appropriate to their needs." These prayers can and do stand apart from any prayers for an Injunction and go directly to the heart of this case: the Arc's claim that Defendants

unlawfully plan to build a segregated institution in the face of a state-sponsored survey finding that all SEVTC residents can be served in the community and without conducting assessments to determine if any SEVTC residents, including Arc members, actually require institutionalization.

D.    The Arc's Causes of Action are Legally Sufficient.

In their Memorandum, Defendants contend that the Arc fails to state claims under *Olmstead*. Specifically, Defendants argue that the Arc has not met the three-prong test for an *Olmstead* case seeking the discharge of a person from an institution. Defendants' position is unavailing because it counters a cause of action the Arc has not put forth. None of the Arc's claims seek a discharge.[10]  Therefore, Defendants' analysis of *Olmstead*, which is incomplete and incorrect at any rate, is irrelevant.

Instead, the Arc claims, in its own right, that Defendants' plan and Budget Bill Item 103.05(A)(1) conflict with and are preempted by the ADA and Section 504 (Counts III and VI) and, on behalf of its members, that Defendants plan and Budget Bill Item 103.05(A)(1) violate its members' ADA and Section 504 rights (Counts I, II, IV and V). Defendants do not argue that these Counts fail to state a cause of action. Therefore, this Court should hold that Defendants have conceded that they do.

---

[10] In its Prayer for Relief for Counts IV and V, the Arc asks that the Court Order Defendants to individually assess SEVTC residents and meet their needs in the most integrated setting appropriate to them. Defendants have already admitted that they did not conduct such assessments. *See,* Exhibit E.  By their express terms, these prayers do not call for any person to be discharged. Rather, they ask for assessments to determine the needs of SEVTC residents, including Arc members. If an assessment determines that an SEVTC resident should be discharged, that individual would have standing to bring an *Olmstead* claim, to which the elements cited by Defendants would apply. However, those issues are not before this Court because, as Defendants admit, the assessments have not been done.

If, however, Defendants now claim that they do not think the Arc has properly stated such causes of action, their arguments are without merit.

      1.    The Arc's causes of action in its own right state claims upon which relief can be granted.

Counts III and VI of the Arc's Complaint properly states claims that Defendants' plan and Budget Bill Item 103.05(A)(1) conflict with the ADA and Section 504 and, therefore, the plan and Item are preempted and invalidated by the Supremacy Clause. This Court has the ability and authority to grant the Declaratory and Injunctive relief sought by the Arc in these Counts. *See, Verizon Maryland,* 535 U.S. at 642-647 (federal courts have subject matter jurisdiction to hear Supremacy Clause challenges to state laws and the authority to enjoin laws that conflict with federal law).

In Counts III and VI, the Arc alleges that the Defendants' plan and Budget Bill Item 103.05(A)(1), to the extent it requires such a plan, conflict with and stand as an obstacle to the ADA and Section 504. Complaint, ¶¶ 138-164 (Count III); 174-175 (Count VI). The Arc further alleges that it has diverted resources to oppose and counter the damage caused by the plan and Item. Complaint, ¶¶ 139-147; 175; Trosclair Affidavit, ¶¶ 59-64.

Pursuant to *Havens Realty* and *Common Cause/Georgia,* the Arc's allegations "established an injury sufficient to confer standing to challenge the statute." *See, Common Cause/Georgia,* 554 F.3d at 1350-51. Moreover, the uncontroverted evidence submitted by the Arc establishes that the plan and Item directly conflict with the requirements of the ADA and Section 504, including Defendants' obligations to provide services in the most integrated setting appropriate to the needs of individuals with disabilities and to conduct individualized assessments to determine those needs. *See,* 28 C.F.R. § 35.130(d) (ADA); 28 C.F.R. § 41.51

(Section 504); United States Department of Justice Commentary to 28 C.F.R.§ 35.130 (Under the ADA, "public entities are required to ensure that their actions are based on facts applicable to individuals and not on presumptions as to what a class of individuals can or cannot do."); *PGA Tour v. Martin*, 532 U.S. 661, 688 (2001) (Under the ADA, "an individualized inquiry must be made to determine" whether a particular person requires a particular service or accommodation*); School Board of Nassau County v. Arline,* 480 U.S. 273, 287-88 (1987) (Section 504 requires an individualized inquiry into a person's needs and abilities).

To supports its contention, the Arc submits and cites the following:

- The state-sponsored study concluding that all SEVTC residents "Can Be Served in the Community." Exhibit D;

- The admissions of the Commissioner and his Deputy that the new 75-bed institution is "arbitrary," not based on any "science or study," and not related to the actual needs of SEVTC residents.  Trosclair Affidavit, ¶¶ 33, 53-55;

- The Governor's statement that SEVTC residents "don't need to be institutionalized;" *See,* WAVY-TV, "Kaine on the economy and 'going green,'" http://www.wavy.com/dpp/news/local_wavy_kaine_budget_update_southeastern_ 20090112; and

- Defendants admission that they do not have any individualized assessments showing that any SEVTC residents "need" institutionalization or any documents showing that a new institution is needed or appropriate. Exhibit E.

In their Memorandum, Defendants' further prove the Arc's point by stating that the individuals currently at SEVTC "will" be evaluated" and that such evaluations "have not yet occurred."  Defendants' Memorandum in Support, p. 5, 14.

Therefore, the evidence in this case establishes that Defendants predetermined that 75 SEVTC residents will be institutionalized and have chosen to build an institution on the segregated SEVTC compound to house them.[11] This plan is diametrically opposite to federal law. "If anything, federal law requires Defendants to consider community placement . . . to determine whether the individual's total needs are such that his or her needs can be met in an appropriate community setting. . . [I]f the inpatient care is appropriate and desired but the [institution] is not the appropriate setting for meeting the individual's needs . . another setting such as an ICF/MR (including small, community based facilities)" is appropriate. *Holland v. Patrick,* 562 F. Supp. 2d 176, 185 (D.Mass. 2008) (internal punctuation and citations omitted).

Defendants' plan also violates the ADA's mandate that States create an "effectively working plan for placing qualified persons with mental disabilities in less restrictive settings . . . not controlled by the State's endeavors to keep its institutions fully populated." *Olmstead,* 527 U.S. at 605-06. Instead of doing so, Defendants plan to fully populate a new institution, regardless of whether 75 SEVTC residents actually require institutional services.

The arbitrary and unnecessary nature of the segregated institution is further proved by the Commissioner's presentation to the General Assembly in January of 2009, copy attached to and made a part of this Memorandum as Exhibit J. In his presentation, Commissioner Reinhard supported closing SEVTC. He testified that a maximum of 55 SEVTC residents may need institutionalization but that they could be served in existing state facilities. Exhibit J, p. 5. Therefore, contrary to Defendants' assertion that SEVTC residents need a new institution due to

---

[11] While Defendants seem to argue that the new institution will be integrated, their contentions are belied by the trenches, barbed-wire topped fences, and No Trespassing signs separating the SEVTC compound from the community. *See,* Exhibit A, ¶¶ 11-16.

the condition of SEVTC, the Commissioner's admission proves that there are ample institutional placements for SEVTC residents who require them and do not want to stay at SEVTC.

> 2. The Arc's causes of action on behalf of its members state causes of action upon which relief can be granted.

In Counts I, II, IV and V of their Complaint, the Arc alleges that Defendants' plan and Budget Bill Item 103.05(A)(1) violate its members' rights under the ADA and Section 504. These counts properly state causes of action upon which relief can be granted.

In general, to state a cause of action under the ADA and Section 504, a plaintiff must allege (1) that s/he is a person with a disability; (2) that s/he is otherwise qualified for the service or benefit he or she seeks; and (3) that s/he was denied or threatened with denial of that service or benefit due to his or her disability.[12] *See,* generally, 42 U.S.C. § 12132; 29 U.S.C. §794; *Baird v. Rose*, 192 F.3d 462, 467 (4th Cir., 1999).

The Arc's causes of action on behalf of its members satisfy this standard. The Arc has alleged that its members are people with disabilities and that they are qualified to receive the benefits they seek. Complaint, ¶¶ 97-99 (Count I); 121-123 (Count II); 165 (Count IV); 168 (Count V). The Arc has also alleged that its members were denied access, due to their disabilities, to services and benefits - including placement in the most integrated setting appropriate to their needs and individualized assessments to determine those needs. Complaint, ¶¶ 103-114 (Count I); 125-137 (Count II); 165-167 (Count IV); 168-170 (Count V).

---

[12] Section 504 also requires that the denial be "solely" due to the Plaintiff's disability and that the defendant is a recipient of federal funds. The Arc has met alleged both. Complaint, ¶¶ 116-117, 137 (Count II); 168-170 (Count V).

Thus, the Arc's Complaint states causes of action upon which relief can be granted. The Defendants' arguments to the contrary, including their allegations that the Arc's claims are not ripe or that the Arc lacks standing to bring them, are without merit and were addressed *supra.*

E.   Defendants do not have Eleventh Amendment Immunity to the Arc's Causes of Action. To the Extent it Must do so, the Arc Properly Invokes *Ex Parte Young*.

1.   Defendants' generalized Eleventh Amendment arguments are without merit.

The Defendants next argue that the Eleventh Amendment bars all of the Arc's causes of action and that the *Ex Parte Young* exception is not applicable. It should be noted, first, that the Arc need not rely on *Ex Parte Young* for its causes of action arising under Section 504 - Counts II and IV - because Virginia has waived its Eleventh Amendment immunity to Section 504 actions. A "provision of the Civil Rights Act of 1964 [states] that 'a state shall not be immune under the Eleventh amendment of the Constitution of the United States from suit in Federal Court for a violation of Section 504 of the Rehabilitation Act.'" *Bruggeman by Bruggeman, et al. v. Blagojevich, et al.*, 324 F.3d 906, 912 (7th Cir. 2003) (citing 42 U.S.C. § 2000d-7(a)(1)). Citing 42 U.S.C. § 2000d, the Fourth Circuit held that Virginia waived its sovereign immunity to Section 504 claims in cases where, as here, Virginia accepted federal funding. *Litman v. George Mason University,* 186 F.3d 544 (4th Cir. 1999)[13].

The remainder of Defendants' Eleventh Amendment arguments do not claim that, as a general rule, they are immune to ADA or Supremacy Clause causes of action or that *Ex Parte*

---

[13] As stated, the Arc has alleged that Defendants receive federal funding. Complaint, ¶¶ 116-117. Defendants do not deny that they are "recipients" for the purposes of Section 504.

*Young* is not generally applicable to such claims.[14]  Rather, they claim that they are immune, and

that *Ex Parte Young* does not apply, because the Arc allegedly lacks standing; the Arc's causes

of action are allegedly unripe; and the Arc's causes of action allegedly fail to state claims under

*Olmstead.*

Defendants' arguments fail because their underlying assumptions are incorrect.  The Arc

addressed and disproved each of Defendants' arguments to the contrary, *supra.*

      2.     Defendants' Eleventh Amendment arguments regarding the Governor and
            the Secretary of Administration are without merit.

Finally, Defendants argue that the Governor and the Secretary of Administration are

immune from the Arc's causes of action and that the *Ex Parte Young* exception does not apply to

them.  Defendants' arguments fail because the Governor and the Secretary of Administration

have a "special relation" to Defendants' plan and Budget Bill Item 103.05(A)(1).  Therefore,

they are proper Defendants to the Arc's causes of action.  *See, e.g., Waste Management*

*Holdings, Inc. v. Gilmore,* 252 F.3d 316, 331 (4th Cir. 2001).

In its Complaint, the Arc alleges that each of the Defendants is "implementing or

working to implement Budget Bill Item 103.05(A)(1).  Complaint, ¶ 52.  The Arc also alleges

that each Defendant will play a role in selecting the contractor that will build the new segregated

institution.  Complaint, ¶ 88.

---

[14] It is worth noting that *Verzon Maryland* holds that the *Ex Parte Young* exception applies to
Supremacy Clause cases.  535 U.S. at 645-6457.  Also, several Courts have held that the *Ex
Parte Young* exception applies in ADA cases where, as here, Plaintiff seeks prospective
injunctive relief against state officials in their official capacity. *See, e.g.,  Board of Trustees v.
Garrett,* 531 U.S. 356, 374 n. 9, (2001); *Bruggerman,* 324 F.3d at 912-13; *Carten v. Kent State
University,* 282 F.3d 391, 396-97 (6th Cir. 2002).

While these allegations, alone, should be enough to establish that the Governor and Secretary of Administration have a "special relation" to Defendants' plan and Budget Bill Item 103.05(A)(1), at least at this stage of the litigation, the Arc offers the Declaration of V. Colleen Miller, attached to and made a part of this Memorandum as Exhibit K, to further elaborate on the "special relation" Secretary Baskerville and Governor Kaine have to Defendants' plan and Budget Bill Item 103.05.

Ms. Miller states that she attended a briefing on Budget Bill Item 103.05(A)(1) given to approximately 20 interested parties. At the briefing, which was given in part by Deputy Commissioner Heidi Dix of DBHDS and in part by DGS representatives, the attendees were told how DGS and DBHDS intended to implement the Budget Bill Item. They were told that bids would be solicited from contractors. They were told that a committee, made up in part by Defendants Secretary Tavenner, Secretary Baskerville and/or their designees, would review the bids and submit a "decision brief" to the Governor recommending one of the bids. The Governor would then review the decision brief, review the bids, and choose one of the bidders to build the new institution. Miller Declaration, ¶¶ 5-11.

Thus, this case is not analogous to *Waste Management Holdings,* where Governor Gilmore did not have a "special relation" or specific duties to enforce or implement a state law. Instead, the Governor and Secretary of Administration have specific roles to play and have taken specific responsibilities to implement Budget Bill Item 103.05(A)(1) and Defendants' plan. As stated in the briefing attended by Ms. Miller, the Item cannot be implemented unless Governor Kaine selects a bidder. Governor Kaine cannot select a bidder until Secretary Baskerville and the other committee members submit their "decision brief."

25

Thus, unlike Governor Gilmore in *Waste Management Holdings*, Governor Kaine and Secretary Baskerville have specific responsibilities to implement Defendants' plan and Budget Bill Item 103.05(A)(1). These responsibilities establish that they have a "special relation" to the plan and Item and, therefore, that they are proper Defendants to the Arc's causes of action.[15]

## V.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests this Court Deny Defendants' Motion to Dismiss and grant them the relief sought in their Complaint. The Arc also prays that this Court Order the Defendants to pay their attorneys' fees and costs, to the extent permitted by law, and for such other and further relief that to this Court seems just and proper.

---

[15] In a footnote, Defendants suggest that Director Sliwoski may not be a proper Defendant. Budget Bill Item 103.05 specifically makes DGS, the agency headed by the Director, responsible for ensuring that the new institution is built. Therefore, even more than Secretary Baskerville or Governor Kaine, the Director has the requisite "special relation" with Defendants' plan and Budget Bill Item 103.05(A)(1).

Dated: 19 November 2009

Respectfully Submitted:

The Arc of Virginia, Inc.
by counsel

The Virginia Office for Protection and Advocacy
1910 Byrd Avenue, Suite 5
Richmond, VA 23230
Tele: (804) 225-2042
Fax: (804) 662-7431

V. Colleen Miller, Executive Director


_____/s_____
Jonathan G. Martinis, Managing Attorney
Virginia State Bar Number: 37299
Virginia Office for Protection and Advocacy
Attorney for Plaintiff
1910 Byrd Avenue, Suite 5
Richmond, VA 23230
Telephone: (804) 225-2042
Fax: (804) 662-7431
E-mail: Jonathan.Martinis@VOPA.Virginia.Gov


_____/s_____
Kalena C.M. Ek, Staff Attorney
Virginia State Bar Number: 74858
Virginia Office for Protection and Advocacy
Attorney for Plaintiff
1910 Byrd Avenue, Suite 5
Richmond, VA 23230
Telephone: (804) 225-2042
Fax: (804) 662-7431
E-mail:Kalena.Ek@VOPA.Virginia.Gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of November, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of such Filing (NEF) to the following:

Ishneila I.G. Moore
Office of the Attorney General
Health Services Section
900 East Main Street
Richmond, Virginia 23219
(804) 371-6019
(804) 371-8718 (Fax)
imoore@oag.state.va.us

                        /s
                        Jonathan G. Martinis, Managing Attorney
                        Virginia State Bar Number: 37299
                        Virginia Office for Protection and Advocacy
                        Attorney for Plaintiff
                        1910 Byrd Avenue, Suite 5
                        Richmond, VA 23230
                        Telephone: (804) 225-2042
                        Fax: (804) 662-7431
                        E-mail: Jonathan.Martinis@VOPA.Virginia.Gov

                        /s
                        Kalena C.M. Ek, Staff Attorney
                        Virginia State Bar Number: 74858
                        Virginia Office for Protection and Advocacy
                        Attorney for Plaintiff
                        1910 Byrd Avenue, Suite 5
                        Richmond, VA 23230
                        Telephone: (804) 225-2042
                        Fax: (804) 662-7431
                        E-mail: Kalena.Ek@VOPA.Virginia.Gov